# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-0398V

|   |   |
|---|---|
| DONNA HORN,<br><br>      Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br><br>Filed: January 30, 2024 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Madylan Louise Yarc*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

  On January 8, 2021, Donna Horn filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on December 2, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

  Because the parties could not informally resolve the claim, they were ordered to file briefs setting forth their respective arguments, and were notified that I would resolve

---

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

this dispute via an expedited "Motions Day" hearing, which ultimately took place on January 29, 2024.

As discussed below, I find Petitioner entitled to compensation, and award her **$55,000.00** for her actual pain and suffering.

### I.     Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## II. Ruling on Entitlement and Damages

After listening to the arguments of both sides, I issued an oral ruling on both entitlement and damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the January 29, 2024 hearing. An official recording of the proceeding was taken by a court reporter, although a transcript has not

yet been filed in this matter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

### A. Entitlement

#### a. Ruling

Respondent argues that Petitioner has failed to demonstrate that the residual complications of her left-sided SIRVA lasted for more than six months after vaccination; that she failed to provide any objective evidence that the flu vaccine was administered in her left shoulder; and that there is not preponderant evidence to show that Petitioner experienced shoulder pain within 48 hours of vaccine administration. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp.") at 7-8. (ECF No. 35).

Respondent's severity contentions arise from the fact that Petitioner received care for only the first three months after vaccination, but then not again for approximately ten months (January 20, 2021) – a gap which spanned the six-month severity requirement. Opp. at 7; Ex. 4 at 49. And when Petitioner did return for care, she complained of left shoulder pain for "several weeks," and did not attribute that pain back to her vaccination, nor to the left shoulder pain that she had previously treated. *Id*.

However, there are several reasonable explanations for the gap in treatment. The COVID-19 Pandemic, for example, started right around the time Petitioner last was seen for treatment of her shoulder in March 2020 - thereby explaining why she might have ceased treatment at that time, since many medical facilities were then closed or limited to only treating patients with life-threatening emergencies. In addition, the record establishes that by the time Petitioner was seen in January 2021, she had been self-treating, with 1300 mg daily of acetaminophen, and had been using lidocaine patches. Opp. at 4; Ex. 4 at 50. These factors weigh heavily in favor of a finding that Petitioner continued to experience left shoulder pain during this time despite her lack of formal treatment.

Next, Respondent argues that Petitioner has failed to provide any objective evidence that her vaccination was administered in her left shoulder, since the December 2, 2019 vaccination record does not identify the site of vaccine administration. Opp. at 7; Ex. 1 at 909. Again, the existing record favors Petitioner's side of this fact dispute. Petitioner's treatment records indicate that she consistently reported that she received the flu vaccine to her left shoulder. All of the treatment to Petitioner's shoulder was *administered* to her left shoulder. And not a single record indicates otherwise, including the vaccination record itself. *See* e.g., Ex. 1 at 948 ( Petitioner "received a flu shot on December 2 and states [ever] since she received the injection her Left arm has been

really sore."); Ex. 1 at 955 (x-ray conducted to left shoulder); Ex. 5 at 16 (Petitioner "presents here with a complaint of left shoulder pain, which started a little over a year ago after she got a flu shot in her left arm. She then developed a vaccine injury with her shoulder."); Ex. 5 at 7, 17 (Petitioner was given a left shoulder injection and underwent two cupping treatments). The fact that the vaccination record does not affirmatively identify the arm of vaccine administration does not, in and of itself, lead to the conclusion that Petitioner's SIRVA claim fails. Thus, I find that Petitioner has satisfied her burden.

Finally, Respondent argues that "Petitioner did not report her alleged left shoulder pain until seventeen days post-flu vaccination on December 19, 2019," and thus she fails to meet the onset requirement. Opp. at 8. Respondent notes that when Petitioner did report shoulder pain, she did not specifically indicate that the pain began within 48 hours of vaccine administration, as required for a presumption of vaccine causation. *Id*. But Respondent's objection is not persuasive in this instance. When Petitioner first reported shoulder pain to her PCP on December 19, 2019, just *seventeen days post-flu vaccination*, she reported that her left arm had been sore "since" she received the flu vaccine. Ex. 1 at 948 (emphasis added). And there is no contrary evidence in the record stating otherwise. Such an initial, post-vaccination treatment record so close in time to the date of vaccination, and which allows for a reading consistent with the Table onset requirement, is sufficient to meet this claim element.

### b.  Other Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Petitioner has therefore established that she suffered a Table SIRVA, satisfying all other requirements for compensation.

### B. Damages

As discussed above, I issued an oral ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the January 29, 2024 hearing. I hereby fully adopt and incorporate that oral ruling as officially recorded. In another recent decision I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y Health & Hum. Servs*., No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022) to the instant Ruling and Decision. Additionally, the official recording of my oral ruling includes my discussion of various comparable cases as well as specific facts

relating to Petitioner's medical history and experience that further informed my decision awarding damages herein.

## Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $55,000.00, represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[4] This is the only element of damages sought in this case.

Accordingly, **I award Petitioner a lump sum payment of $55,000.00, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.